JOSEPH FALCON-FREEMAN, SBN 318601
HOMELESS ACTION CENTER
2601 San Pablo Ave.
Oakland, CA  94612
Phone:  (510) 695-2260 x. 318
Fax:      (510) 858-7867
jfalcon-freeman@homelessactioncenter.org


Attorney for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN MICCO,<br><br>       Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY<br><br>       Defendant. | CASE NO.   3:18-cv-05513-SK<br><br>PLAINTIFF'S REPLY BRIEF IN OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMAND |

## I.  INTRODUCTION

This action is filed according to Civil L.R. 16-5, and as such, it is submitted on the papers without oral argument. Plaintiff has moved for summary judgment, reversal of the Commissioner's final decision, and remand of this case in accordance with sentence four of 42 U.S.C. § 405(g), and Defendant has moved for summary judgment and affirmation of the Commissioner's final decision.

## II.  ARGUMENT

**A.  The ALJ Improperly Gave Greater Weight to the Opinions of Consultants Who Never Examined Plaintiff Than the Opinions of the Psychologist Who Did**

The ALJ gave greater weight to the opinions of non-examining state agency consultants than to the opinions of examining psychologist Dr. Lesleigh Franklin, Ph.D., who not only reviewed more of Plaintiff's medical records, but also conducted a clinical interview and administered objective psychological testing. (AR 106, 122, 965). An ALJ must provide "specific and legitimate" reasons based on substantial evidence in the record to justify discounting an examining doctor's contradicted opinions. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995) ("[L]ike the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.")

Here, the ALJ offered two justifications for discounting Dr. Franklin's "overly restrictive" opinion: (1) Plaintiff's mental health treatment was allegedly "limited and inconsistent," and (2) Plaintiff previously worked for "extended periods" before "leaving voluntarily." Neither reason is legitimate.

The ALJ's justification of limited treatment is both unsupported by substantial evidence as a factual matter and is also improper as a matter of law. As a factual matter, Plaintiff engaged in extensive outpatient treatment, including the use of psychotropic medications, for well over a year before discontinuing treatment because it wasn't helping and was causing side effects. (AR 405-457, 467-486, 960-969). As a matter of law, the Defendant's reliance on "limited" treatment fails, as the Circuit has rejected "the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgement in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (internal quotation marks and citation omitted).

The ALJ's finding that Plaintiff left gainful employment "voluntarily," is also not supported by substantial evidence, as detailed in Plaintiff's motion. (Plf.'s Br. at pp. 11-12).

Plaintiff testified that he left jobs at a deli because he felt increasingly suicidal and at a car shop because the stress of employment overwhelmed him, culminating in a violent altercation. (AR 53, 55). This is precisely how Plaintiff's bipolar disorder would be expected to prevent his ability from maintaining full time employment and should not be glossed as "voluntary."

Defendant insists that the ALJ's justifications for discrediting Dr. Franklin's statement are legitimate in light of Plaintiff's use of alcohol and drugs. (Def.'s Br. at pp. 3-4). As a factual matter, Defendant overstates the influence of alcohol and drug use on Plaintiff's symptoms. Furthermore, even if alcohol or drug use really was substantially related to Plaintiff's symptoms, the materiality of drug or alcohol use should be evaluated following the analysis of the "materiality" of drug abuse or alcoholism prescribed by Defendant's regulations. *See* 20 C.F.R. §§ 404.1535, 416.935.

As a factual question, it is undisputed that Plaintiff has used drugs and alcohol problematically, but Defendant overstates the evidence that alcohol or drug use exacerbated Plaintiff's symptoms. Defendant makes much of Plaintiff's intoxication preceding his October 20, 2014, psychiatric hospitalization. (Def.'s Br. at pp 3-6) (AR 459). There is no question that Plaintiff was drunk on that occasion, and that the psychiatric emergency room physician concluded that Plaintiff's "acute mood disturbance" was "caused by alcohol intoxication." (AR 459). But Defendant's averment that "Plaintiff's treating providers diagnosed him with 'bipolar disorder with acute mood disturbance, which was caused by alcohol intoxication'" is inaccurate (Def.'s Br. at p. 4). Rather, only Plaintiff's emergency room physician, on this one occasion, concluded as much. (AR 459). Under Defendant's regulations, a "treating" source refers to a doctor whose opinion is given great weight because she has seen a patient multiple times and is able to provide a "longitudinal picture" of a claimant's impairments. § 404.1527(c)(2). A treating source "may bring a unique perspective to the medical evidence that cannot be obtained from … reports of . . . brief hospitalizations." *Id.* But Defendant does not cite to the opinion of a treating provider, but rather merely the conclusion of an emergency room physician who saw claimant on only this single occasion. (Def.'s Br. at p. 4, citing AR 459). Similarly, when Defendant claims that "[Plaintiff's] providers noted that Plaintiff's acute

symptoms resolved once he stopped being intoxicated," Defendant cites again only to the same October 20, 2014 incident, and the statement of the same lone emergency room physician. (Def.'s Br. at p. 4). Substantial evidence does not support Defendant's contention.

In any case, even if substantial evidence supported the conclusion that "heavy use of alcohol, marijuana, and cocaine appeared to significantly impact Plaintiff's behavior and capabilities," this conclusion improperly interjects the analysis of "materiality" of drug abuse or alcoholism into the weighing of evidence. *See* 20 C.F.R. §§ 404.1535, 416.935. The ALJ must provide "specific and legitimate" reasons for discrediting Dr. Franklin's opinion evidence, and Plaintiff's drug and alcohol use do not bolster the conclusion that the ALJ's justifications of limited mental health treatment and previous employment were legitimate. *Lester* 81 F.3d at 831.

Defendant argues that "it was reasonable for the ALJ to conclude that when Plaintiff complied with treatment, including abstaining from the heavy alcohol and drug usage that exacerbated his symptoms, he would be capable of performing the work set forth in his restrictive RFC." (Def.'s Br. at p. 4). But this reasoning conflicts with the Defendant's own regulations, which provide for a specific procedure for evaluating the role of alcohol and drug use whether drug addiction and alcoholism are "material" to a claimant's impairments. 20 C.F.R. §§ 404.1535, 416.935. The materiality analysis is to be undertaken only once the claimant is found disabled through the sequential evaluation process. *See* 20 C.F.R. §§ 404.1535(a), 416.935(a). If the claimant is found disabled, and there is evidence of drug addiction or alcoholism, the Commissioner must then "determine whether [the claimant's] drug addiction or alcoholism is a contributing factor material to the determination of disability." *Id*. In determining materiality, the Commissioner first evaluates which conditions would remain if a claimant stopped using drugs or alcohol. 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). If the "remaining limitations are disabling," then drug addiction and alcoholism are not material, and the claimant is found disabled. 20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii).

The ALJ erred by failing to provide specific and legitimate reasons for discrediting the opinions of examining psychologist Lesleigh Franklin, who based her opinions on a clinical

interview and objective psychological testing, in favor of state agency consultants who never examined Plaintiff. Remand is therefore warranted.

**B. The ALJ Erred in Rejecting Plaintiff's Symptom Testimony Without Providing Adequate Justification**

The ALJ did not provide specific reasons for rejecting Plaintiff's symptom testimony, and instead provided only the general, boilerplate assertion that Plaintiff's testimony was inconsistent with the evidence "for the reasons explained in this decision." (AR 28). The ALJ therefore failed to provide "specific, clear and convincing reasons" for discrediting Plaintiff's symptom testimony. *Lingerfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007); *Lester*, 81 F.3d at 834. The requirement of specificity means that "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. The ALJ's failure to offer specific (much less clear and convincing) justifications for rejecting Plaintiff's testimony is reversible error. *See Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (rejecting ALJ's explanation "that there was little or nothing in the record to support Dodrill's claims" as insufficiently specific).

Defendant's post hoc justifications for rejecting the Plaintiff's symptom testimony are irrelevant *See Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making the decision.") (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)); *Stout v. Comm'r Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir. 2006); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) ("[W]e are wary of speculating about the basis of the ALJ's conclusion . . ."); See *Owens v. Heckler*, 748 F.2d 1511, 1516 n. 6 (11th Cir. 1984) ("We decline . . . to affirm simply because some rationale might have supported the ALJ's conclusion.").

Furthermore, the specific justifications now offered by Defendant are not convincing. Defendant argues that the "mental-status examinations in Plaintiff's treatment record generally indicated his memory was grossly intact." (Def.'s Br. at 6). To support this proposition, Defendant cites to two treatment notes, both entered by Dr. Amanda Bachuss. (Def.'s Br. at 6) (AR 475, 759).  But the "mental status examinations" finding "grossly intact" memory in these

two notes are not substantial evidence justifying a conclusion that Plaintiff's testimony was not credible. Defendant's attempt to identify specific instances when Plaintiff failed to exhibit sufficiently severe symptoms of mental illness fails because it is "error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms." (citation omitted)).

Moreover, Defendant's reliance on "mental status examinations" finding "grossly intact" memory on two occasions is misplaced. The Ninth Circuit recognizes that the primary purpose of medical records is not to provide evidence for disability claims: "The primary function of medical records is to promote communication and recordkeeping for health care personnel-not to provide evidence for disability determinations. We therefore do not require that a medical condition be mentioned in every report to conclude that a physician's opinion is supported by the record." *Orn v. Astrue*, 495 F.3d 625, 634 (9th Cir. 2007).

Reversal is warranted because the ALJ failed to provide specific and legitimate justifications for discrediting Plaintiff's symptom testimony.

**C.  The ALJ Improperly Rejected the Testimony of Plaintiff's Mother Without Offering a Germane Reason**

As Defendant acknowledges, the ALJ was required to provide a "germane" reason for partially discounting Plaintiff's mother's thirty-party testimony. (Def.'s Br. at p. 7). The sole reason for discounting Ms. Micco's testimony offered by the ALJ was an alleged inconsistency between, on the one hand, her testimony as to Plaintiff's limited ability to maintain attention, and on the other hand, the fact that Plaintiff was "able to complete psychological testing." (AR 31). However, the psychological testing that the ALJ referred to actually found that Plaintiff had significant impairments in his ability to maintain attention, and so it is unclear what is the significance of his ability to "complete" the testing. (Plf.'s Br. at p. 18) (AR 969, 972).

Defendant argues that error here is harmless as Plaintiff's "mother's allegations were duplicative of his own claims." (Def.'s Br. at p. 6). Even if this were so, it is irrelevant here because the ALJ also failed to provide appropriate justification for discounting Plaintiff's own testimony, as argued supra. Plaintiff submits this claim should be remanded for payment of benefits, but if it is remanded for further proceedings then Defendant should be instructed to offer a germane reason for discrediting Ms. Micco's testimony.

**D. The ALJ Erred in Finding Plaintiff's Functional Abdominal Disorder Not Severe**

Although the ALJ noted Plaintiff's "occasional stomach upset" and "cyclical vomiting," she dismissed those symptoms, stating that Plaintiff has "less abdominal pain when he is not drinking and decreases marijuana use," and concluded that Plaintiff did not have a severe abdominal condition. (AR 25). An impairment is "severe" if it significantly limits an claimant's ability to perform basic work activities, and meets the durational requirement. 20 C.F.R. § 416.909. A step two inquiry is intended to be a "de minimus screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).

Defendant's claim that Plaintiff's functional abdominal disorder did not last for "a continuous period of not less than 12 months" is unsupported. (Def.'s Br. at 7) (quoting 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). From before Plaintiff's alleged onset of disability of January 31, 2012, through at least the end of 2015, Plaintiff suffered from an abdominal disorder that caused nausea, cyclical vomiting, chronic abdominal pain, and repeated trips to the emergency room ("ER"). (e.g., AR 360, 377, 381). In November 2014, he was held overnight at the hospital with intractable nausea, vomiting, and diffuse abdominal pain. (AR 505). He presented to the ER with similar symptoms on December 8, 2014. (AR 831). In January of 2015, Plaintiff was evaluated by specialist Dr. Taft Bhuket, M.D., at Highland Hospital's gastrointestinal clinic. (AR 665). Dr. Bhuket noted that Plaintiff's condition was "lifestyle limiting and persistent." (AR 668). Plaintiff continued to make regular emergency room visits due to this condition throughout 2015, including on February 23, 2015 (AR 657), February 26, 2015 (AR 625), March 19, 2015 (AR 558), April 21, 2015 (AR 604), July 31,

2015 (AR 548), November 1, 2015 (AR 716), and November 3, 2015 (AR 806). Plaintiff's abdominal disorder therefore lasted for a continuous period of more than 12 months.

Defendant also argues that any error at step two would be harmless. (Def.'s Br. at 7). Error at step two is generally harmless so long as the ALJ continues past step two of the sequential evaluation process. *See Buck v. Berryhill,* 869 F.3d 1040, 1048 (9th Cir. 2017). In *Buck,* the Circuit clarified that step two "is not meant to identify the impairments that should be taken into account when determining [claimant's residual functional capacity]." *Id.* Failure to include all impairments at step two is therefore generally harmless so long as the ALJ continues the sequential evaluation analysis past step two and properly determines the claimant functional capacity. *Id.* However, the ALJ here did not apply this rule, and consequently did not include impairments caused by Plaintiff's abdominal condition in her determination of Plaintiff's residual functional capacity. (AR 28). Although Defendant asserts that the ALJ did, in fact, incorporate limitations from Plaintiff's functional abdominal disorder in the formulation of Plaintiff's RFC, this is inaccurate and there is no evidence to support this assertion. As the ALJ's error at step two caused her to omit limitations from Plaintiff's residual functional capacity, this error was in fact harmful. *See Mercado v. Berryhill,* No. 16-cv-04200-BLF, 2017 WL 4029222 (N.D. Cal. Sept. 13, 2017) (finding that failure to include all impairments at step two is harmful error notwithstanding *Buck* where ALJ fails to incorporate non-severe impairments into claimant's residual functional capacity).

**E.  The ALJ Erred in Relying on VE Testimony Given in Response to a Hypothetical Question that Did Not Include All Plaintiff's Impairments**

The ALJ herself raised the issue of how often Plaintiff would be "off task" and absent from work. (AR 78-79). The vocational expert testified that a limitation either of being "off task" ten percent of the workday or of missing one day of work per month, in combination with the other restrictions in the ALJ's finding of Plaintiff's RFC, would preclude all employment. (AR 79) (Plf's Br. at pp. 21-22). As detailed in Plaintiff's opening brief, the evidence is overwhelming and uncontradicted that Plaintiff would be "off task" at least ten percent of the time and would miss at least one day of work per month as a result of his impairments. (Plf.'s

Br. at pp. 20-24). Although the evidence is unequivocal and the ALJ herself raised the issue at hearing, the ALJ omitted any limitation of being "off task" or excessively absent from her formulation of Plaintiff's RFC. (AR 27). Strikingly, the ALJ offered no discussion or explanation for this omission. (AR 27).

The Defendant does not appear to contest that the RFC formulated by the ALJ was not based on substantial evidence. (Def.'s Br. a p. 8). Rather, Defendant protests that "ALJ's are not bound by hypothetical questions presented to vocational experts" and that "the ALJ presented the vocational expert with a hypothetical that accurately reflected the ALJ's RFC finding." *Id.* This is undisputed, but also irrelevant. Plaintiff nowhere alleges that there is a discrepancy between the ALJ's finding of RFC and the corresponding hypothetical offered to the vocational expert. Rather, Plaintiff alleges that there is a discrepancy between the ALJ's finding of RFC and the evidence itself. The ALJ's omission of any restriction related to being off task or excessively absent is not based on substantial evidence. An ALJ posing a hypothetical question to a vocational expert "must include all of the claimant's functional limitations, both physical and mental supported by the record." *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) (internal quotations and citation omitted.)  An ALJ "need not include all claimed impairments in his hypotheticals, [but] he must make specific findings explaining his rationale for disbelieving any of the claimant's subjective complaints not included in the hypothetical." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997). It is reversible error when an ALJ relies on VE testimony given in response to a legally inadequate hypothetical question. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006) ("an ALJ is not free to disregard properly supported limitations").

**F.  The Court Should Remand For Payment of Benefits, or Further Proceedings**

As discussed in detail in Plaintiff's Motion for Summary Judgment, the Court should remand for payment of benefits because this case meets the criteria of the credit-as-true rule, further proceedings would not be useful, and there is no serious doubt that Plaintiff is disabled. (Pl.'s Br. at p. 25).

Defendant argues that the "record precludes" remand for payment of benefits because "to the extent Plaintiff had additional functional limitations, further vocational evidence would be required." This is inaccurate. The record already contains testimony from a vocational expert – elicited by the ALJ – that Plaintiff would be unemployable if either a limitation to being "off task" or excessively absent was added to his RFC. As discussed in Plaintiff's opening brief and *supra*, both limitations are supported by all evidence, including the opinions of the non-examining state agency consultants that Plaintiff argues Defendant gave inordinate weight. (Plf.'s Br. at pp. 20-24). As all the evidence agrees that Plaintiff would be limited in being "off task" and excessively absent as a result of his conditions, and vocational testimony has already been obtained demonstrating that (either) of these restrictions would eliminate all jobs, remand here is appropriate for payment of benefits.

### **III.** Conclusion

For the foregoing reasons, Plaintiff respectfully asks the Court to grant summary judgment for Plaintiff, reverse the decision of the Commissioner, and remand with instructions to award benefits pursuant to sentence four of 42 U.S.C. § 405(g). In the alternative, the Court should remand for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

Respectfully submitted,

Dated:        March 8, 2019                           /s/ *Joseph Falcon-Freeman*

                                                        Joseph Falcon-Freeman

                                                        Attorney for Sean Micco